IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| BRANDY C. GONZALEZ,<br><br>        Plaintiff,<br><br>  v.<br><br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>        Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br><br><br>Case No. 1:10-cv-138-RJS<br><br><br>Judge Robert J. Shelby |

Plaintiff Brandy C. Gonzalez seeks judicial review of the final decision of the Commissioner of Social Security Administration denying Ms. Gonzalez's application for supplemental security income (SSI). After a careful review of the record and for the reasons discussed below, the court finds that some of the findings made by the administrative law judge (ALJ) are not supported by substantial evidence in the record. In this case, some of the ALJ's findings relied on repeated mischaracterizations of treating physician Dr. Christina Gallop's notes and letters. Accordingly, the court VACATES the ALJ's decision and REMANDS to the Commissioner for further proceedings in accordance with this opinion.

BACKGROUND

I.   **Procedural Background**

On February 28, 2008, Ms. Gonzalez filed an application for SSI alleging disability from multiple sclerosis beginning February 19, 2008.  The Social Security Administration denied her claims on April 9, 2008, and again upon reconsideration on July 14, 2008.  Ms. Gonzalez requested a hearing, which was held on June 1, 2009, in front of Administrative Law Judge (ALJ) Robin L. Henrie.  On July 9, 2009, Judge Henrie denied Ms. Gonzalez's application.  This appeal followed.

II.  **Factual Background**

Ms. Gonzalez was born on October 31, 1975.  (R. at 18.)  She was 32 years old at the time of her application.  (*Id.*)  She does not have any relevant past work and has limited education.  (*Id.*)

A.   Ms. Gonzalez's Medical History

During January 2008, Ms. Gonzalez received an MRI of her lumbar spine because she was experiencing lower back and right leg pain.  (R. at 284–85.)  The MRI showed that she suffered from a degenerated disc.  (*Id.*)  The MRI also showed extensive abnormal white matter consistent with multiple sclerosis.  (R. at 286.)  On January 13, 2008, Dr. Christina Gallop, M.D., diagnosed Ms. Gonzalez with multiple sclerosis and reported that Ms. Gonzalez was not able to work.  (R. at 346.)  Her symptoms, as a result of the multiple sclerosis, include pain, difficulty walking, occasional falls, and wide-based gait with right foot drop and unsteady balance.  (*See generally* R. at 327–354.)  These symptoms, while at times responding to pain medication, have progressively worsened.  (R. at 354.)

On February 20, 2008, Ms. Gonzalez tripped over an extension cord and fractured her tibia and fibula, compounding her ambulatory difficulties. (R. at 233–234.) Ms. Gonzalez received surgery for this fracture the next day. (R. at 240–241.) She appears to have fully healed from the fracture within twelve months. Also in February 2008, Ms. Gonzalez appears to have ended her use of methamphetamine. (R. at 294.)

On October 7, 2008, Dr. Gallop noted that Ms. Gonzalez came in ready to start Avonex treatment. Dr. Gallop also noted that Ms. Gonzalez was having "great difficulty" walking, especially "going up and down stair[s.]" But, she had not suffered any falls and refused to use a cane or walker. (R. at 341.) Dr. Gallop also observed similar issues in a follow-up appointment on October 27, 2008. (R. at 339.)

On November 24, 2008, Dr. Gallop observed that Ms. Gonzalez suffered from an abnormal wide-based gait and unsteady stance but that Ms. Gonzalez continued to refuse to use a cane. (R. at 336.) Dr. Gallop also observed that the Avonex injections appeared to give Ms. Gonzalez slightly increased mobility. (R. at 335.)

On December 9, 2008, Dr. Gallop noted that Ms. Gonzalez's last attack of multiple sclerosis occurred in February of 2008 and that she suffered from relapsing and recurring multiple sclerosis. (R. at 333.)

On January 7, 2009, Dr. Gallop saw Ms. Gonzalez again and noted that Ms. Gonzalez felt she was getting worse despite the weekly injections of Avonex, with "more falls, more difficulty walking" and "a hard time going up and down stairs." (R. at 331.) Ms. Gonzalez told Dr. Gallop that she "rarely leaves the house because of her physical difficulties." (*Id*.) Less than a week later, on January 13, 2009, Ms. Gonzalez saw Dr. Gallop again for the same worsening

symptoms. (R. at 328.) Ms. Gonzalez "appear[ed] to be having a harder time walking than only 2 months ago." (R. at 329.)

      B.      <u>Letters Regarding Ms. Gonzalez's Condition</u>

Dr. Gallop has treated Ms. Gonzalez from early 2007 to 2009. (R. at 328–354). Based on this treating relationship, Dr. Gallop has generally opined that Ms. Gonzalez had progressively worsening multiple sclerosis. In addition, Dr. Gallop also wrote three letters supporting Ms. Gonzalez's application.

On April 18, 2009, Dr. Gallop wrote the first letter regarding Ms. Gonzalez, concluding that Ms. Gonzalez had "a difficult time with falls, ambulation, and pain" associated with multiple sclerosis. (R. at 344). Dr. Gallop noted weekly injections of Avonex and stated that Ms. Gonzalez was "working hard to keep herself healthy." (*Id*.) Dr. Gallop also noted "significant disability from her multiple sclerosis" that caused Ms. Gonzalez to be "unable to work for the past year." (*Id*.)

On May 29, 2009, Dr. Gallop wrote a second letter noting her treating relationship with Ms. Gonzalez since December 2007. (R. at 349.) Dr. Gallop wrote that, apart from the multiple sclerosis, Ms. Gonzalez was "doing very well and working hard to get her life together." (*Id*.)

On October 13, 2009, Dr. Gallop wrote a third and final letter expressing the opinion that Ms. Gonzalez's multiple sclerosis continued to progress and an attendant "significant disorganization of her motor function" prevented her from leaving the house. (R. at 354.) Dr. Gallop noted that Ms. Gonzalez was not responding to standard medication for multiple sclerosis, that she should be referred to a specialist, and that she was likely "permanently disabled from her multiple sclerosis," which would continue to worsen. (*Id*.)

C.  Other Medical Evidence

Dr. Gallop's notes and letters form the bulk of the medical evidence. In addition, in a Review Board Medical Consultant Findings Report dated February 24, 2008, Dr. Robert Mullen, M.D. noted that Ms. Gonzalez's condition met or equaled the Step Three disability Listing 11.09A and that onset of listing level severity began on or before January 2008. (R. at 347.)

Also Dr. Lewis Barton, the state medical examiner, prepared a residual functional capacity assessment for Ms. Gonzalez on April 1, 2008. Dr. Barton found that Ms. Gonzalez could occasionally lift 20 pounds and frequently lift ten pounds. She could stand for six hours in an eight-hour workday, and had few manipulative limitations. (R. at 310–313.) Dr. Barton also found that Ms. Gonzalez should not work exposed to intensive heat. (R. at 312–13.)

D.  Testimonial Evidence

On June 1, 2009, Ms. Gonzalez appeared before Judge Henrie. In that hearing, Ms. Gonzalez testified that she suffered from back pain, leg pain, leg weakness, ambulatory problems, headaches, weakness in her hand, blurry vision, and memory issues. (R. at 34–42.) Her "legs would give out and they buckle under." She would sometimes fall, and she falls a lot. And she was getting worse. (R. at 37.) Ms. Gonzalez further testified that the pain medication did not really do much, and "after a couple of hours [the pain] gets back up." (*Id*.) Also, she did not drive and did not have her driving license. (R. at 45–46.) She experienced back pain, tremors, and nausea from driving. (*Id*.) Ms. Gonzalez next testified that she was taking Avonex for her multiple sclerosis. She thought that Avonex would help her walk a little better, but it had not. (R. at 48.) She noted that she cooks infrequently. (R. at 51.)

During the hearing, the ALJ asked Ms. Gonzalez a hypothetical question about working

at an office job.  Ms. Gonzalez guessed that she could only put in an hour at an office job "making copies and filing and answering phones," explaining that this was because her back hurt her a lot, her neck hurt her, and she has to go to the bathroom frequently.  (R. at 53.)  She also said that all of her symptoms together amounted to a seven on a pain scale of ten.  (R. at 57.)

Also during the hearing, the ALJ asked Ms. Terri Marshall (a vocational expert) three questions.  First, the ALJ asked Ms. Marshall the appropriate jobs for a person with Ms. Gonzalez's age, education, and past relevant work experience with the ability to do a limited range of sedentary, unskilled work.  (R. at 59–60.)  The ALJ clarified that this meant an ability to be on her feet about an hour out of an eight hour workday; frequent reaching, handling, and fingering; and the need to work in a climate controlled environment.  (R. at 60.)  Ms. Marshall answered that the person could be an order clerk, a call out operator, or a charge account clerk. (R. at 59-60.)

Second, the ALJ also asked Ms. Marshall to testify about appropriate jobs for a person, like in the first question, except that person had additional limitations.  These limitations were reduced handling, reaching, and fingering to "occasionally" or one third of the day.  (R. at 61.) Ms. Marshall testified the person could be a call out operator or that person could be a surveillance system monitor.  (*Id.*)

Third, the ALJ asked Ms. Marshall to testify about appropriate jobs for a person that complained of symptoms like the ones suffered by Ms. Gonzalez.  These symptoms include headache, memory loss, ineffective ambulation, debilitating back pain, numbness and tingling in the extremities, dizziness, and tremors.  (R. at 62.)  Ms. Marshall testified that this would eliminate any sustainable employment.  (*Id.*)

ANALYSIS

**I.     Standard of Review**

The court reviews the ALJ's decision to determine whether substantial evidence in the record as a whole supports the factual findings, and whether the correct legal standards were applied. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). "It requires more than a scintilla, but less than a preponderance." *Id.* The court cannot reweigh the evidence or substitute its judgment for that of the administrative law judge below. *Id.* The court must "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking into account whatever in the record fairly detracts from its weight." *Hamlin v. Barnhart*, 365 F.3d 1208, 1241 (10th Cir. 2004). But the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax,* 489 F.3d at 1084 (citation omitted).

**II.    The ALJ's Decision**

"The Commissioner is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled." *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). The claimant bears the burden of proof at the first four stages. *Id.* Step One requires the claimant to demonstrate "that he is not presently engaged in substantial gainful activity." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). At Step Two, the claimant must show "that he has a medically severe impairment or combination of impairments." *Id.* At Step Three, if a claimant can show that the impairment is equivalent to a listed impairment, he is

presumed to be disabled and entitled to benefits. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir.1988). If a claimant cannot meet a listing at Step Three the claimant continues to Step Four, which requires the claimant to show "that the impairment or combination of impairments prevents him from performing his past work." *Grogan*, 399 F.3d at 1261. "If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at [S]tep [F]ive to show that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy, given her age, education, and work experience." *Hackett*, 395 F.3d at 1171. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750.

The ALJ performed this sequential analysis and found that Ms. Gonzalez met the requirements of Step One and Step Two. But the ALJ found that Ms. Gonzalez's multiple sclerosis did not meet Step Three (even though Listing 11.09 specifically discusses multiple sclerosis) primarily because she did not meet the 12 month durational requirement. (R. at 15.) In making this determination, the ALJ found that Ms. Gonzalez's limitations had two distinct causes: (1) she fractured her left tibia/fibula on February 2008; and (2) she suffered from multiple sclerosis. (R. at 16.) The ALJ found that the medical records showed that Ms. Gonzalez started injection treatments for multiple sclerosis in October 2008. At that time, she "had a wide, spastic gait, but refused to use a cane or walker and said she had no falls." (R. at 15.) In addition, the ALJ found that in April 2009, the treating doctor indicated that Ms. Gonzalez was "doing very well but was having difficulty with falls." (R. at 16.) The ALJ also found that by May 2009, the treating doctor indicated Ms. Gonzalez "was compliant with her multiple sclerosis treatment and was doing well with medication." (R. at 16.) The ALJ further

noted that Dr. Gallop did not attribute Ms. Gonzalez's inability to work directly to multiple sclerosis. (*Id.*) Ms. Gonzalez's multiple sclerosis, therefore, was not a significantly limiting problem until the fall of 2008, and prior to that, Ms. Gonzalez's limitations were attributable to the fractured leg. Consequently, Ms. Gonzalez failed the twelve month durational requirement because her limitations from multiple sclerosis began about October 2008 but was improved by May 2009 with treatment.

Next, the ALJ found that Ms. Gonzalez "has had the residual functional capacity to perform the full range of sedentary work" with a few limited physical exceptions. (R. at 16.) In making this determination, the ALJ cited the "agency reviewing doctor's opinion that [Ms. Gonzalez] could perform light work with occasional use of the hand and avoiding heat and hazards." (R. at 18.) The ALJ discounted the testimony of Ms. Gonzalez because her "description of her difficulties is not consistent with earlier records." (*Id.*) Importantly, the ALJ discounted the testimony of the treating physician, Dr. Gallop, finding that Dr. Gallop's conclusion that Ms. Gonzalez was disabled for more than a year was inconsistent with the treatment records. And, as another justification for discounting Dr. Gallop's testimony, the ALJ found that Dr. Gallop appeared to combine the limitations from the leg fracture in February 2008 with the limitations from multiple sclerosis. (*Id.*)

The ALJ further found that Ms. Gonzalez could perform four jobs in the national economy. In making this determination, the ALJ relied on the testimony of the vocational expert who opined that, based on Ms. Gonzalez's age, education, work experience, and residual functional capacity, Ms. Gonzalez could perform the following jobs: surveillance systems monitor, food and beverage clerk, charge account clerk, and call-out operator. (R. at 19.) The

ALJ also found that Ms. Gonzalez could perform the jobs of surveillance systems monitor or call-out operator even if she could only perform occasional reaching, handling, and fingering. (*Id.*)

### III. Ms. Gonzalez's Arguments on Appeal

Ms. Gonzalez believes that the ALJ's findings were based on legal error and were not supported by substantial evidence for four reasons. First, Ms. Gonzalez argues that at Step Three, the ALJ incorrectly determined that Ms. Gonzalez's multiple sclerosis did not meet or equal Listings 11.09A. Second, Ms. Gonzalez contends that the ALJ improperly diminished the weight of Dr. Gallop's testimony because the ALJ mischaracterized Dr. Gallop's notes and letters. Ms. Gonzalez asserts that the ALJ relied on these mischaracterizations to reach the conclusion that Ms. Gonzalez's impairments did not meet any listing. Third, Ms. Gonzalez maintains that the ALJ improperly diminished the weight of Ms. Gonzalez's own subjective testimony. Finally, Ms. Gonzalez argues that the ALJ constructed an improper hypothetical at Step Five.

### A. The ALJ's Determination that Ms. Gonzalez Did Not Meet Listing 11.09A is Not Supported by Substantial Evidence.

The court discusses Ms. Gonzalez's first and second argument together because the facts involved in both arguments are intertwined. In these arguments, Ms. Gonzalez contends that there was no substantial evidence to support the ALJ's finding that Ms. Gonzales was not impaired from her multiple sclerosis for a continuous period of at least 12 months (the twelve month durational requirement). And Ms. Gonzalez contends that the ALJ mischaracterized treating physician Dr. Gallop's notes and letters to reach that finding.

The Tenth Circuit has held, "To show that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment." *Lax*, 489 F.3d at 1085 (citing 20 C.F.R. §§ 404.1525, 416.925 (2006)). Specifically, to meet Listing 11.09A Ms. Gonzalez must establish that her condition was accompanied by "disorganization of motor function." 20 C.F.R. pt 404, subpt. P, app. 1 § 11.09A. Moreover, the evidence must show that her "impairment has lasted or can be expected to last for a continuous period of at least 12 months," in other words, her condition must meet the twelve-month durational requirement. 20 C.F.R. § 416.925(c)(4). In determining whether Ms. Gonzalez meets these requirements, "an ALJ must discuss 'the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.'" *Hamlin,* 365 F.3d at 1217 (citing *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)). An ALJ may not "pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability." *Id.* at 1219.

Here, the ALJ appropriately relied on Dr. Barton's determination that Ms. Gonzalez could perform the requirements of light work in April 2008. (R. at 310.) But nearly all the remaining evidence supporting the ALJ's decision comes from mischaracterizations of Dr. Gallop's notes and letters. For example, the ALJ relied on Dr. Gallop's letter dated in April 2009 to suggest that Ms. Gonzalez "was doing very well but was having difficult with falls." (R. at 16.) But the full context of the letter reads "*apart from the multiple sclerosis*, I feel she is doing very well and working hard to get her life together." (R. at 344) (emphasis added). The ALJ also relied on this letter to note that Dr. Gallop "did not attribute the inability to work to the MS." (R. at 16.) But

11

this letter actually noted, "Ms. Gonzalez has significant disability from her multiple sclerosis." (R. at 344.) In addition, ALJ found that Dr. Gallop's May 29, 2009 letter "indicated that the claimant was compliant with her MS treatment and was doing well with medication." (R. at 16.) But the ALJ ignores the sentence in that letter stating that "apart from the multiple sclerosis, I feel that she is doing very well." (R. at 349.) Additionally, the ALJ found that in February 2008 "there is no evidence that [Ms. Gonzalez] had any limitations related to the MS." (R. at 15.) This finding, however, is directly contradicted by Dr. Gallop's treatment observations as reflected in her notes and letters generally, and also by Dr. Mullen's opinion. (*See* R. at 33; *see also* R. at 347.)

Moreover, in the context of multiple sclerosis claims, the ALJ is required to take into account the relapsing and recurring nature of MS. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 ("In conditions which are episodic in character, such as multiple sclerosis or myasthenia gravis, consideration should be given to frequency and duration of exacerbations, length of remissions, and permanent residuals."). It is therefore inappropriate for the ALJ to rely only on periods when Ms. Gonzalez had less pain (such as when the Avenox was effectively treating her pain) to support the conclusion that Ms. Gonzalez did not meet the durational requirement.

Accordingly, the court finds that the ALJ's determination that Ms. Gonzalez did not meet Listing 11.09A is not supported by substantial evidence.

  **B.**  **The ALJ's Mischaracterizations Are Not Harmless Error.**

While the Commissioner acknowledges problems with select quotations by the ALJ, she nevertheless argues that these mischaracterizations constitute harmless error. An error is harmless when "based on material the ALJ did at least consider (just not properly), we could

12

confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Here, in order to make this determination, the court must weigh Dr. Barton's isolated residual functional capacity assessment against Dr. Gallop's lengthy observations of Ms. Gonzalez and other medical evidence in the record noting Ms. Gonzalez's difficulties. Given the weight of the evidence noting Ms. Gonzalez's difficulties, the court is not convinced that every reasonable administrative fact-finder would resolve the Step Three listing requirement against Ms. Gonzalez.

Next, the Commissioner argues that if findings at other steps of the decision-making process provide a proper basis for upholding the earlier decision, the error is harmless. *See, e.g.*, *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005) ("[A]n ALJ's finding at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment."). The Tenth Circuit further explained that the findings at the other steps must "conclusively negate" a finding of disability at Step Three. *See Carpenter v. Astrue,* 537 F.3d 1264, 1266 (10th Cir. 2008)*; see also Dye v. Barnhart*, 180 F. App'x 27, 30 (10th Cir. 2006) ("[T]here are no findings by the ALJ, like those in *Fischer-Ross*, that *conclusively negate* the possibility that Ms. Dye can meet the other listing requirements.") (emphasis added).

Here the ALJ relied on the same mischaracterizations of Dr. Gallop's notes and letters to determine Ms. Gonzalez's residual functional capacity. For example, the ALJ stated that the "treating doctor said that [Ms. Gonzalez] meets the listing (11.09) and was disabled for over a year." (R. at 18.) Nevertheless, the ALJ did "not give this full weight because it is inconsistent

13

with the treatment records." (*Id.*) These were the same records that the ALJ mischaracterized in Step Three. Accordingly, the court finds that the ALJ's mischaracterizations do not constitute harmless error.

### C. Ms. Gonzalez's Remaining Arguments

In view of the court's decision to remand this case to correct the errors in the determination of Step Three, the remaining issues may be affected by the ALJ's treatment of the case on remand. The court, therefore, will not reach these issues raised by Ms. Gonzalez. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Gilbert v. Astrue*, 231 Fed. App'x 778, 785 (10th Cir. 2007) ("In light of the remand of this case, we do not reach the remainder of [the plaintiff's] claims on appeal").

## CONCLUSION

For the foregoing reasons, the court finds that substantial evidence on the record does not support the factual findings of the ALJ. The court, however, is mindful that the correct treatment of Dr. Gallop's notes and letters, and a reexamination of the evidence in light of this decision would not automatically result in an award of SSI for Ms. Gonzalez. Moreover, additional fact-finding may be necessary. Accordingly, the court VACATES the ALJ's decision and REMANDS to the Commissioner for further proceedings in accordance with this opinion.

SO ORDERED this 28th day of October, 2013.

                                BY THE COURT:

                                _____
                                ROBERT J. SHELBY
                                United States District Judge